## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ILLUMIDINE, INC.,<br><br>       Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>       Defendants. | Civil Action No. 2:24-cv-00199<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Illumidine, Inc. ("Illumidine" or "Plaintiff") files this Complaint for patent infringement against Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendants"), alleging, based on its own knowledge as to itself and its own action, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.  This is a patent infringement action to stop Samsung's infringement of the following United States Patents (collectively, the "Asserted Patents", issued by the United States Patent and Trademark Office ("USPTO"):

| U.S. Patent No. | Title | Available At: |
|---|---|---|
| 10,881,249 | Foodware system having visual-stimulating, sensing, heating, and wireless-communication components | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10881249<br><br>https://patentimages.storage.googleapis.com/94/74/08/bc1ca86655ab31/US10881249.pdf |
| 11,375,853 | Foodware system having visual-stimulating, sensing, heating, and wireless-communication components | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11375853<br><br>https://patentimages.storage.googleapis.com/a0/bd/13/ab455c4c5e1efc/US11375853.pdf |

2.    Illumidine seeks injunctive relief and monetary damages.

## PARTIES

3.    Illumidine is a corporation organized under the laws of the State of California since July 23, 2014, with its principal place of business at 601 Mystic Lane, Foster City, California 94404 (San Mateo County).

4.    Illumidine is the assignee of the Asserted Patents, with all rights to recover for all past, present, and future infringement, including past damages.

5.    On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized under the laws of the Republic of Korea, with its principal place of business at 129, Samsung-Ro, YeongTong-Gu, Suwon-Si, Gyonggi-Do, 443-742, Republic of Korea.

6.    On information and belief, Defendant Samsung Electronics America, Inc. ("SEA") is a United States corporation organized under the laws of the State of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.  SEA is a wholly owned subsidiary of SEC.

7.    On information and belief, SEA has corporate offices in the Eastern District of Texas at 1303 East Lookout Drive, Richardson, Texas 75082; 2800 Technology Drive, Suite 200, Plano, Texas 75074; and 6625 Excellence Way, Plano, Texas 75023.

8.    On information and belief, SEA may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

9.    On information and belief, Defendants are related entities that work in concert to design, manufacture, import, distribute, offer to sell, and/or sell devices that infringe the Asserted Patents.

## JURISDICTION AND VENUE

10.      Illumidine repeats and re-alleges the allegations in the Paragraphs above as though set forth in their entirety.

11.      This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284-85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331 and 1338(a).

12.      Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and the Texas Long Arm Statute.  Tex. Civ. Prac. & Rem. Code §§ 17.041, *et. seq.*

13.      On information and belief, jurisdiction and venue for this action are proper in this District.

14.      This Court has personal jurisdiction over each Defendant because each Defendant, directly or through intermediaries, has committed acts within this District giving rise to this action and/or has established minimum contacts with this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.  In particular, each Defendant (i) has a regular and established place of business in the State of Texas and this District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this District; (iii) has done and is doing substantial business in the State of Texas and this District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including its one or more acts of infringement in the State of Texas and this District; (iv) has derived and derives substantial revenues from infringing acts occurring in the State of Texas and this District; (v) maintains continuous and systematic contacts in the State of Texas and this District; and/or (vi) places products alleged to be infringing in this

Complaint in the stream of commerce with awareness that those products are sold, used, and offered for sale in the State of Texas and this District.

15.    SEA maintains a regular and established place of business in this District at 6625 Excellence Way, Plano, Texas 75023, and has committed acts of infringement in this District from its Plano, Texas place of business.

16.    Samsung has described this 216,000 square foot "flagship" Plano office, with over 1,000 employees, as part of its "longstanding and growing commitment to Texas."[1]

17.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) at least because SEA has committed acts of infringement and is subject to personal jurisdiction in this District, including by way of maintaining a regular and established place of business at 6625 Excellence Way, Plano, Texas 75023.  SEA, through its own acts and/or through the acts of each other Defendant acting as its agent, representative, or alter ego, makes, uses, sells, offers to sell, and/or imports infringing products within this District, has a continuing presence within this Judicial District, and has the requisite minimum contacts with this District such that venue is proper.

18.    Additionally, venue is proper as to SEC under 28 U.S.C. § 1391(c)(3) because SEC is a foreign corporation organized and existing under the laws of the Republic of Korea.

19.    SEC is subject to personal jurisdiction in this district at least because it places products alleged to be infringing in this Complaint in the stream of commerce with the awareness and intention that those products are sold, used, and offered for sale in the State of Texas and this District.

---

[1]    *See* https://news.samsung.com/us/samsung-electronics-america-open-flagship-north-texas-campus/ (last accessed March 12, 2024).

## ILLUMIDINE'S DEVELOPMENT OF THE PATENTED ACTIVE FOODWARE SYSTEM

20.     Illumidine repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

21.     The founder and Chief Executive Officer of Illumidine is James Kramer, Ph.D. ("Dr. Kramer").

22.     Dr. Kramer has a Bachelor's degree in mechanical engineering from the University of Arizona, and a Master's Degree and Ph.D. in electrical engineering from Stanford University. Dr. Kramer earned his Ph.D. from Standford University while focusing on smart-product design.

23.     In or about the fall of 2003, after the successful sale of a previous company that focused on hand-sensing gloves used with virtual reality systems, Dr. Kramer became interested in kitchen products and the idea of a "smart kitchen."  His initial focus was on creating active dining and cookware products, including a smart plate.

24.     On or about October 22, 2004, Dr. Kramer filed his first patent application, Application No. 10/904,103, for an active foodware system.  From 2004 through 2013, while also focusing on other business ventures, Dr. Kramer continued to pursue new patents for his active foodware system.

25.     In or about July 2014, Dr. Kramer incorporated Illumidine.  Dr. Kramer also continued developing smart-plate prototypes.  For example, one 2017 prototype included separate dining surfaces for food.  Each dining surface had a corresponding load cell underneath it to measure the food.  This information was then relayed to a custom microprocessor module, which controlled the device.



26.     Dr. Kramer also continued to pursue additional patents that further protected his active foodware systems.

27.     In or about October 2017, Dr. Kramer attended the Smart Kitchen Summit in Seattle, Washington.  The Smart Kitchen Summit is the leading event and community focused on the future of food, cooking and the kitchen.  It brings together the world's innovators across the home appliance, culinary, grocery, smart-home/Internet of Things, and technology industries to explore and create the future together.

28.     Participation in the Smart Kitchen Summit motivated Dr. Kramer to share his active foodware system with like-minded individuals, and Dr. Kramer spent the next year readying a prototype smart plate, known as SmartDish®, for demonstration at the 2018 Smart Kitchen Summit.

29.     As part of these preparations, Dr. Kramer continued to pursue patents that further covered his smart dining and cookware products.  For example, on or about September 27, 2018, Dr. Kramer filed Application No. 16/144,938, which eventually issued as U.S. Patent No. 10,881,249 (the "'249 patent").

30.     In or about October 2018, Dr. Kramer attended the Smart Kitchen Summit, again in Seattle, Washington.  This time, he rented a booth, and he demonstrated his prototype smart plate to hundreds of people over the course of the conference.

31.     Dr. Kramer also demonstrated his prototype smart plate at the 2019 Consumer Electronics Show in Las Vegas, Nevada in or about January 2019.  He demonstrated his prototype smart plate to thousands of people over the course of the four-day conference, and more than 200 interested people signed up for his mailing list.

32.     Given the public's interest in Dr. Kramer's invention at the trade shows he attended, Dr. Kramer has spent years further developing his inventions and obtaining quotes to mass manufacture his product and working to secure funding to do so.

33.     Dr. Kramer has also spent years further pursuing additional patents to protect his smart dining and cookware products.  For example, on or about January 4, 2021, Dr. Kramer filed Application No. 17/140,795, which eventually issued as U.S. Patent No. 11,375,853 (the "'853 patent").

## THE ACCUSED PRODUCTS

34.     Illumidine repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

35.     Based upon public information, Defendants sell, offer for sale, and/or advertise induction WiFi-enabled cooktops under its various brands, including Samsung and Dacor, including, but not limited to, the following exemplary induction WiFi-enabled cooktops: Samsung NE63T8911SG/AA,  Samsung  NE63T8951SS/AA,  Samsung  NE63B8211SS/AA,  Samsung NE63B8611SG/AA,   Samsung  NZ30A3060UK/AA,  Samsung  NZ30K7880US/AA,  Samsung NZ36K7880US/AA,  Samsung  NZ36C3060UK/AA,    Dacor  DTI30M977BB/DA,  Dacor DTI36M977BB/DA, Dacor DTI30P876BB/DA, Dacor DTI36P876BB/DA, etc.  Defendants

instruct end users to use the hardware, software, and functionality that allows users to use the WiFi-enabled cooktops, including, but not limited to, the model numbers listed above and the Samsung SmartThings application (collectively, the "<u>Accused Products</u>").  *See, e.g.,* **Exhibit A** (Samsung NE63*895*S* User Manual); **Exhibit B** (Samsung NZ30A3060UK User Manual); **Exhibit C** (Samsung NZ36C3060UK User Manual); **Exhibit D** (Samsung NE63T8951SS Specification Sheet); **Exhibit E** (Samsung NZ30A3060UK Specification Sheet); **Exhibit F** (Samsung NZ36K7880US Specification Sheet); **Exhibit G** (Dacor DTI36M977BB / DTI30M977BB User Manual); **Exhibit H** (Dacor DTI30M977BB/DA Specification Sheet).

36.    In general, the Accused Products include a mechanical structure that is wider than it is tall.  *See, e.g.,* Ex. E at 2; Ex. F at 2; Ex. H at 2.  This structure includes an inductive coil for providing inductive electrical power, acting as a heating component to cook food and drinks.



Figure  1  -  https://www.samsung.com/us/home-appliances/cooktops-and-hoods/induction-cooktops/36--built-in-induction-cooktop-with-flex-cookzone--nz36k7880us-aa/



Figure 2 - https://www.samsung.com/us/home-appliances/cooktops-and-hoods/induction-cooktops/30--smart-induction-cooktop-with-wi-fi-in-black-nz30a3060uk-aa/



Figure 3 - https://www.dacor.com/us/products/cooking/cooktops-and-rangetops/30-inch-induction-cooktop-lcd-frameless-contemporary-black-glass-dti30m977bb/

37.    The Accused Products also include a sensing component for controlling the heating

component (*i.e.*, inductive coil) in order to maintain a desired temperature.



Figure 4 – https://www.samsung.com/us/home-appliances/cooktops-and-hoods/induction-cooktops/30--smart-induction-cooktop-with-wi-fi-in-black-nz30a3060uk-aa/



Figure 5 - https://www.samsung.com/us/home-appliances/ranges/electric/6-3-cu--ft--smart-slide-in-induction-range-with-flex-duo---smart-dial---air-fry-in-stainless-steel-ne63t8951ss-aa/

38.    Because induction cooktops rely on electromagnetic energy to create heat, they can only be used with induction-compatible cookware.  Indeed, Defendants inform and guide their users that "[i]f cookware is unsuitable, too small, or no cookware has been placed on the cooking zone" an error message will appear and, "[a]fter 30 seconds, the corresponding cooking zone will

turn off." Ex. A at 27; *see also* Ex. B at 18; Ex. C at 18; Ex. G at 25. Furthermore, Defendants provide a free induction cookware set with any Samsung induction cooktop or range.

### Cookware for induction cooking zones

The Induction element can only be turned on when cookware with a magnetic base is placed on one of the cooking zones. You can use the cookware identified as suitable below.

**Cookware material**

| Cookware material | Suitable |
|---|---|
| Steel, Enamelled steel | Yes |
| Cast iron | Yes |
| Stainless steel | If appropriately labelled by the manufacturer |
| Aluminium, Copper, Brass | No |
| Glass, Ceramic, Porcelain | No |

📄 **NOTE**
- Cookware appropriate for induction cooking is labelled as suitable by the manufacturer.
- Certain cookware can make noise when being used on induction cooking zones. These noises are not a fault in the appliance and do not affect operation in any way.

Figure 6 - https://downloadcenter.samsung.com/content/UM/202311/20231122162142443/O_01._NE9000T_NE63T8951SS_AA_04_EN.pdf at 27; *see also* https://downloadcenter.samsung.com/content/UM/202310/20231019163153587/O_NZ30A3060UK_DG68-01384A_EN.pdf at 24

📄 **NOTE**
- If a pan made of the correct material is centered properly on any of the active Cooking Zones but is too small, the affected Cooking Zone display will flash and the pan will not heat.
- If cookware is unsuitable or too small or no cookware has been placed on the cooking zone, ⊔ will be displayed. After 30 seconds, the corresponding cooking zone will turn off.

Figure 7 - https://downloadcenter.samsung.com/content/UM/202310/20231019163418913/O_01._DG68-01384C-01_IB_NZ36C3060UK_AA_EN.pdf at 24

> **Safety shutoff**
> - If the cooktop overheats because of an abnormal operation, 'C1' will be displayed, and the cooktop will turn off.
> - If unsuitable or excessively small-sized cookware is put on a cooking zone, or no cookware has been placed on a cooking zone, the cooktop will turn off automatically.
> - If either of the above happen, clean the control panel and turn the cooktop on again.

Figure 8 - https://image-us.samsung.com/SamsungUS/dacor/products/cooking/cooktops-and-rangetops/dti30m977bb/download/Dacor-Modernist-Cooktops-30-Induction-Cooktop-User-Manual.pdf at 25



Figure 9 – https://www.samsung.com/us/home-appliances/cooktops-and-hoods/induction-cooktops/30--smart-induction-cooktop-with-wi-fi-in-black-nz30a3060uk-aa/

39.    The Accused Products also include a visual display that provides visual stimulation in response to the data from the sensing component.  *See, e.g.,* Ex. A at 23; Ex. B at 16-17; Ex. C at 16-17; Ex. G at 35.

40.    The Accused Products also include Wi-Fi connectivity for sending and receiving data from smartphones and tablets running the Samsung SmartThings application.  *See* Ex. A at 55; Ex. B at 27; Ex. C at 27; Ex. G at 20-21.  The Samsung SmartThings application provides real-time information regarding the temperature of the various burners.



Figure 10 – https://www.samsung.com/us/home-appliances/ranges/electric/6-3-cu--ft--smart-slide-in-induction-range-with-flex-duo---smart-dial---air-fry-in-stainless-steel-ne63t8951ss-aa/



Figure 11 - https://www.samsung.com/us/home-appliances/cooktops-and-hoods/induction-cooktops/36--built-in-induction-cooktop-with-flex-cookzone--nz36k7880us-aa/



Figure 12 - https://www.samsung.com/us/home-appliances/cooktops-and-hoods/induction-cooktops/30--smart-induction-cooktop-with-wi-fi-in-black-nz30a3060uk-aa/

    41.    The Samsung SmartThings application also offers a database of recipes to choose from.

## Use SmartThings Cooking



If you're wondering what to make for dinner, let SmartThings Cooking help you out. It's available in the SmartThings app and has tons of unique recipes that will suit your dietary preferences, such as a vegan, vegetarian, or gluten-free diet. It also includes easy-to-follow instructions so you can cook or bake whatever you're in the mood for. Although you don't have to have any smart appliances to use the app, any SmartThings-connected refrigerators (such as Family Hub), ranges, or ovens will sync up with it for even easier food management.

Figure 13 - https://www.samsung.com/us/support/answer/ANS00088902/

    42.    Samsung has been on notice of Illumidine technology since at least on or about October 13, 2022, by virtue of correspondence sent to Samsung describing the patent portfolio, including the Asserted Patents (the "Illumidine Email").

        **COUNT I:**   **INFRINGEMENT OF U.S. PATENT NO. 10,881,249**

    43.    Illumidine repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

    44.    The USPTO duly issued the '249 patent on January 5, 2021, after a full and fair examination of Application No. 16/144,938, which was filed on September 27, 2018, and claims priority to an application filed on October 22, 2004.

45.     Illumidine is the assignee of the '249 patent with all substantial rights, and interest in and to the '249 patent, including the sole and exclusive right to prosecute this action and enforce the '249 patent against infringers, and to collect damages for all relevant times.

46.     Illumidine or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '249 patent.

47.     The claims of the '249 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that allow for an active foodware system.

48.     The written description of the '249 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date.  The '249 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

49.     Defendants have infringed one or more claims of the '249 patent by using, providing, supplying, or distributing the Accused Products.

50.     Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '249 patent, as detailed in the preliminary and exemplary claim chart attached as Exhibit I hereto, which is incorporated by reference herein.

51.     For example, the Accused Products provide an active foodware system comprising a mechanical structure being wider than tall and including a wireless sending component for

sending; a food surface supported by said mechanical structure, said food surface having a peripheral region surrounding said food surface, said food surface being recessed in relation to said peripheral region for receiving solid food and preventing spillage from said food surface; a heating component for heating said food; a sensing component for controlling said heating component for maintaining a desired temperature; a wireless communication component for communicating data related to said desired temperature, data from said sensing component, digital data related to said food, or electrical power; and a visual stimulating component for providing visual stimulation in response to said data from said sensing component or data from said wireless communication component.

52.    Since at least the time of receiving the Illumidine Email in October of 2022, Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '249 patent by inducing others to directly infringe one or more claims of the '249 patent. Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, contractors, employees, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '249 patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '249 patent, including, for example, claim 1 of the '249 patent.  Such steps by Defendants include, among other things, advising or directing subsidiaries, parents, partners, affiliates, contractors, employees, customers or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendants are performing these steps, which

constitutes induced infringement with the knowledge of the '249 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '249 patent. Defendants' inducement is ongoing.

53.    Since at least the time of receiving the Illumidine Email in October of 2022, Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '249 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '249 patent by subsidiaries, parents, partners, affiliates, contractors, employees, customers and other end-users. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '249 patent, including, for example, claim 1 of the '249 patent. The special features include, for example, the system recited in claim 1. The special features constitute a material part of the invention of one or more of the claims of the '249 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

54.    Defendants have had knowledge of the '249 patent since at least the time they received the Illumidine Email in October of 2022.

55.    Furthermore, on information and belief, Defendants have a practice of not reviewing the patents of others (including instructing its employees not to review the patents of others), and thus have been willfully blind of Illumidine's patent rights.

56.    Defendants' actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

57.    Since at least the time of receiving the Illumidine Email in October of 2022, Defendants' indirect infringement of one or more claims of the '249 patent was, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Illumidine's rights under the patent.

58.    Illumidine has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Illumidine in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59.    Illumidine has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Illumidine has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '249 patent.  Defendants' actions have interfered with and will continue to interfere with Illumidine's ability to license its technology.  The balance of hardships favors Illumidine's ability to commercialize its own ideas and technology.  The public interest in allowing Illumidine to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 11,375,853**

60.    Illumidine repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

61.    The USPTO duly issued the '853 patent on July 5, 2022, after a full and fair examination of Application No. 17/140,795, which was filed on January 4, 2021, and claims priority to an application filed on October 22, 2004.  A Certificate of Correction was issued on October 24, 2023.

62.    Illumidine is the assignee of the '853 patent with all substantial rights, and interest in and to the '853 patent, including the sole and exclusive right to prosecute this action and enforce the '853 patent against infringers, and to collect damages for all relevant times.

63.    Illumidine or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '853 patent.

64.    The claims of the '853 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that allow for an active foodware system.

65.    The written description of the '853 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date.  The '853 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

66.    Defendants have infringed one or more claims of the '853 patent by using, providing, supplying, or distributing the Accused Products.

67.    Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '853 patent, as detailed in the preliminary and exemplary claim chart attached as Exhibit J hereto, which is incorporated by reference herein.

68.    For example, the Accused Products provide an active foodware system comprising a mechanical structure; a food surface supported by said mechanical structure, said food surface

having a peripheral region surrounding said food surface, said food surface being recessed in relation to said peripheral region for receiving solid food and preventing spillage from said food surface; a heating component for heating said food; and a wireless communication component for wirelessly sending data; wherein said mechanical structure includes said wireless communication component.

69.     Since at least the time of receiving the Illumidine Email in October of 2022, Defendants have indirectly infringed and continues to indirectly infringe one or more claims of the '853 patent by inducing others to directly infringe one or more claims of the '853 patent. Defendants have induced and continues to induce their subsidiaries, parents, partners, affiliates, contractors, employees, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '853 patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '853 patent, including, for example, claim 1 of the '853 patent.  Such steps by Defendants include, among other things, advising or directing subsidiaries, parents, partners, affiliates, contractors, employees, customers or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '853 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '853 patent. Defendants' inducement is ongoing.

70.    Since at least the time of receiving the Illumidine Email in October of 2022, Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '853 patent.  Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '853 patent by subsidiaries, parents, partners, affiliates, contractors, employees, customers and other end-users.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '853 patent, including, for example, claim 1 of the '853 patent.  The special features include, for example, the system recited in claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '853 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

71.    Defendants have had knowledge of the '853 patent since at least the time it received the Illumidine Email in October of 2022.

72.    Furthermore, on information and belief, Defendants have a practice of not reviewing the patents of others (including instructing their employees not to review the patents of others), and thus have been willfully blind of Illumidine's patent rights.

73.    Defendants' actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

74.    Since at least the time of receiving the Illumidine Email in October of 2022, Defendants' indirect infringement of one or more claims of the '853 patent was, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Illumidine's rights under the patent.

75.     Illumidine has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Illumidine in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

76.     Illumidine has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Illumidine has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '853 patent.  Defendants' actions have interfered with and will continue to interfere with Illumidine's ability to license its technology.  The balance of hardships favors Illumidine's ability to commercialize its own ideas and technology.  The public interest in allowing Illumidine to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

77.     Illumidine hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

78.     WHEREFORE, Illumidine requests that the Court find in its favor and against Defendants, and that the Court grant Illumidine the following relief:

a.     Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or all others acting in concert therewith;

b.     A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the claims of the Asserted

Patents, or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents;

c.   Judgment that Defendants account for and pay to Illumidine all damages to and costs incurred by Illumidine because of Defendants' infringing activities and other conduct complained of herein;

d.   Judgment that Defendants' infringement of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Illumidine its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>March 19, 2024</u>

Respectfully submitted,

By:  <u>*/s/ Jonathan L. Hardt*</u>

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
Kristin M. Whidby (VA 91805)*
**ROZIER HARDT MCDONOUGH PLLC**
500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Telephone: (202) 217-0575
Email: matt@rhmtrial.com
Email: kristin@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

**Attorneys for Plaintiff ILLUMIDINE, INC.**

\* Admitted to the Eastern District of Texas

**List of Exhibits**
  A.  Samsung NE63*895*S User Manual
  B.  Samsung NZ30A3060UK User Manual
  C.  Samsung NZ36C3060UK User Manual
  D.  Samsung NE63T8951SS Specification Sheet
  E.  Samsung NZ30A3060UK Specification Sheet
  F.  Samsung NZ36K7880US Specification Sheet
  G.  Dacor DTI36M977BB / DTI30M977BB User Manual
  H.  Dacor DTI30M977BB/DA Specification Sheet
  I.  Preliminary and Exemplary Claim Chart Demonstrating Infringement of At Least Claim 1 of the '249 Patent
  J.  Preliminary and Exemplary Claim Chart Demonstrating Infringement of At Least Claim 1 of the '853 Patent